# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DARRIL LYNN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:14 CV 428 CDP |
| | ) | |
| GEORGE LOMBARDI, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This case is before this Court on the petition of Darril Lynn for writ of

habeas corpus pursuant to 28 U.S.C. § 2254. He pleaded guilty to kidnapping and

was sentenced to 10 years imprisonment in the Missouri Department of

Corrections. In his petition for habeas corpus relief, Lynn asserts five grounds.

His claim that the trial court erred in accepting an open *Alford* plea or that plea

counsel was ineffective for not interviewing Jackie Moss and Robert Allen are

procedurally barred. The Missouri Court of Appeals addressed the rest of his

claims and denied them on the merits. The appellate court's decision was not

contrary to clearly established Federal law, nor was it based on an unreasonable

determination of the facts. Therefore, this Court will deny Lynn's petition for writ

of habeas corpus.

## Background

On December 6, 2011, Lynn entered an *Alford* plea for the class B felony of kidnapping. At the plea hearing, the following exchange occurred:

> [COURT]:  Mr. Lynn, then it's my understanding that you wish to enter what's referred to as an *Alford* plea, meaning that you do not believe you're guilty of the class B felony charge of kidnapping that you are charged with but that the State's evidence is such that if the case were tried you do believe you would be found guilty, is that correct?
>
> [MOVANT]:  Yes, Sir.
>
> [COURT]:  All right.  And do you understand that if I do accept this as an *Alford* plea that the same possibilities as to punishment, penitentiary sentence is the only possibility on this charge?
>
> [MOVANT]:  Yes, sir.

Lynn informed the court that he had been given sufficient time to discuss his case with his attorney and had no complaints about his attorney's handling of the case.  Lynn testified that he understood that by entering a plea he was waiving the right to be tried by a jury and the presumption of innocence.  Lynn also understood that he was waiving the right to confront his accusers and to call witness in his defense.

Lynn stated that no threats or promises had been made to cause him to plead guilty.  No one had made any promise on the sentence he would receive.  The court asked Lynn:  "Do you understand that no one can promise what your sentence will be and I can impose any sentence within the range of punishment permitted by law

and the range of punishment on this charge is a minimum of five up to a maximum of fifteen years in the penitentiary?" Lynn responded, "Yes, sir."

The prosecutor informed the court of the facts as follows. On or about December 15th, 2009, Chester Harvey telephoned Lynn and asked him to remove James McNeely ("Victim") from Harvey's home. On the night of December 17th, Lynn, along with Jackie Moss and Robert Allen entered Harvey's home, "removed" Victim and took Victim to Lynn's home. Victim remained at Lynn's home until Harvey and several of his family members arrived at Lynn's home the next day. Lynn showed Harvey how to place duct tape on Victim's hands. Harvey bound Victim, removed him from Lynn's home, and drove him to the Harvey's residence. Over the next several days, the Harvey family tortured and killed Victim.

The court asked: " Mr. Lynn, do you agree that's what the State's evidence would be if the case were tried?" Lynn answered, "Yes, sir." The court found there was a factual basis for Lynn's *Alford* plea, that Lynn understood the nature of the charge and the plea was at least as voluntary and unequivocal as an *Alford* plea could be. The court accepted the plea.

At the sentencing hearing, the court sentenced Lynn to ten years' imprisonment. Lynn stated that plea counsel had done everything he had asked of him. Lynn said he was satisfied with counsel's services and did not have any

complaints. Lynn was able to review the police reports and evidence with counsel, and counsel had spoken with witnesses as instructed by Lynn.

On June 25, 2012, Lynn filed a Rule 24.035 motion for post-conviction relief. The motion court denied his motion after an evidentiary hearing. The motion court found that Lynn was not a credible witness and that counsel and the prosecutor were credible as to the facts they remembered. Lynn appealed. The Missouri Court of Appeals affirmed the denial of post-conviction relief.

## Discussion

In his petition for writ of habeas corpus, Lynn asserts five claims, containing a total of seven allegations:

(1) The trial court erred by (a) accepting an open *Alford* plea; and (b) failing to make an explicit finding on the record that Lynn's plea was a voluntary and intelligent choice among his alternative courses of action;

(2) Counsel was ineffective for advising Lynn to enter an open *Alford* plea because it provided no benefit over a trial;

(3) Counsel was ineffective for failing to conduct adequate pre-trial investigation by (a) not reading all the discovery the State provided, and (b) not interviewing or deposing Jackie Moss, Robert Allen, and Scott Trower;

(4) Counsel was ineffective for telling Lynn that he stood a "good chance" of receiving probation since two less culpable defendant each received several years in prison from negotiated pleas; and

(5) Counsel was ineffective for failing to file and litigate a motion to suppress Lynn's statements to police that he assisted Chester Harvey by providing duct tape and explaining how to wrap Victim's hands so he could not escape.

# I.    Procedural Bar

Lynn raised all the above claims in his appeal from the denial of his post-conviction motion.  (Resp. Exh. A and E).  The Missouri Court of Appeals declined to address claim 1(a) because Lynn had failed to present this argument to the motion court. *Lynn v. State*, 417 S.W.3d 789, 797 (Mo. Ct. App. 2013) (Resp. Exh. D. at 6).  The Court of Appeals did not decide Lynn's claim that counsel was ineffective for not investigating and interviewing Moss and Allen because Lynn failed to furnish the court with the record necessary to address the claim.  (Resp. Exh. D. at 16-17).

To preserve issues for federal habeas corpus review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  If a state prisoner fails to raise the claims following applicable state procedural rules, then the prisoner is procedurally barred from raising them in a federal habeas corpus action.  *Id.* at 1151.

Federal habeas review of a claim is barred where a prisoner has defaulted his federal claims in a state court under an independent and adequate state procedural rule.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  State procedural rules are adequate and independent when they are "firmly established and regularly followed."  *Oxford v. Delo*, 59 F.3d 741, 746 (8th Cir. 1995).  If "the last state

court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar," a federal habeas court is precluded from reviewing the claim. *Harris v. Reed*, 489 U.S. 255, 263 (1989).

The Missouri Court of Appeals is the "last state court rendering a judgment in this case." Its ruling clearly and expressly stated its denial of the two claims was based solely on state procedural bars.

Lynn's claim of trial court error for accepting an open *Alford* plea was defaulted because Lynn failed to present the same claim to the motion court. (Resp. Exh. D. at 6). In the post-conviction motion, Lynn argued that it was error to accept an *Alford* plea without making an explicit finding that the plea was a voluntary and intelligent choice among alternatives, (which is claim 1(b)), but he did not argue, as he does here and he did on appeal, that open *Alford* pleas were *per se* invalid.

Lynn's claim of ineffective assistance of counsel for not interviewing and deposing Moss and Allen was rejected because Lynn failed to provide that court with an adequate record to review the claim.[1] Lynn introduced depositions of Moss and Allen at the post-conviction evidentiary hearing, but he failed to include these depositions on appeal. (Resp. Exh. D. at 16). Missouri Supreme Court Rule 81.12 (a) provides that "[t]he record on appeal shall contain all of the record,

---

[1] This does not apply to the claim as it relates to potential witness Trower.

proceedings and evidence necessary to the determination of all questions to be presented, by either appellant of respondent, to the appellate court for decision." It is the appellant's duty to "prepare and file a record on appeal that incorporates the proceedings showing that the motion court erred." *Garris v. State*, 389 S.W.3d 648, 652 (Mo. banc 2012); *see State v. Cella*, 32 S.W.3d 114, 117 (Mo. 2000); *Rhodes v. Zhang*, 7 S.W.3d 7, 8 (Mo. Ct. App. 1999); *State v. Dunn*, 817 S.W.2d 241, 244 (Mo. banc 1991) ("It is the appellant's duty to prepare a complete record on appeal."). Lynn failed to comply with Missouri Supreme Court Rule 81.12 and so he procedurally defaulted this claim.

A state prisoner can overcome a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Alternatively, to use the fundamental miscarriage of justice exception, a petitioner must present new

evidence that "affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 324, 338 (8th Cir. 2006).

Lynn cannot overcome these defaults. First, he fails to show cause because he did not allege any external factor impeded his efforts to comply with the state procedural requirements. Second, he fails to present any new evidence to demonstrate his actual innocence.

Therefore, claim 1(a) and claim 3(b) to the extent it raises counsel's failure to interview Moss and Allen are procedurally barred.

## II.    Merits of Remaining Claims

A petitioner is entitled to federal habeas relief only if the state court's adjudication resulted in a decision, (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d).

In *Shafer v. Bowersox,* 329 F.3d 637, 646-47 (8th Cir. 2003), the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from relevant Supreme Court precedent" but arrives at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000). A state court "unreasonably applies" clearly established

federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable." *See id*. at 411.

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by a clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa,* 327 F.3d 748, 752 (2003) (quoting 28 U.S.C. § 2254(d)(2) and citing 28 U.S.C. § 2254(e)(1)).

A. Lynn's *Alford* plea is valid because it was both knowing and voluntary.

In his first claim, Lynn alleges that the trial court failed to follow the procedures required for an *Alford* plea because the court failed to make an explicit finding on the record that Lynn made a voluntary and intelligent choice among his alternative courses of action. The Missouri Court of Appeals addressed the claims by first looking into *Alford*:

> In *Alford*, the Supreme Court held a criminal defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence [by way of a guilty plea] even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37. The Court stated that the standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31.

(Resp. Exh. D at 6).  The Missouri Court of appeals noted the *Alford*

footnote, relied on by petitioner here, stating that "pleas coupled with claims

of innocence should not be accepted unless there is a factual basis for the

plea and until the judge taking the plea has inquired into and sought to

resolve the conflict between the waiver of trial and the claim of innocence."

(Resp. Exh. D at 6).

The Court of Appeals found that the trial court had inquired into and

sought to resolve the conflict between Lynn's waiver of trial and his

innocence claim.  Lynn informed the trial court that he did not believe he

was guilty of the crime, but that he believed the State's evidence was such

that if the case had been tried he would have been found guilty.  Lynn also

confirmed that he understood penitentiary sentence was the only possibility

if the court accepted his *Alford* plea.  Lynn informed the court that, he

understood by entering an *Alford* plea, he was giving up his rights to a trial

by jury, to confront his accusers, to call his own witnesses, and to the

presumption of innocence at trial.  He agreed that the State's evidence would

show that he, acting knowingly with others, unlawfully confined Victim

without his consent for a substantial period for the purpose of terrorizing

Victim.  Finally, Lynn understood that the trial court could impose any

sentence within the range of punishment permitted by law.  (Resp. Exh. D at 7).

The Court of Appeals determined that the trial court's dialogue with Lynn at the plea hearing was "more than sufficient to establish that [Lynn] made a voluntary and intelligent choice among options available to him." (Resp. Exh. D. at 8).  Although the trial court did not expressly ask Lynn whether he believed entering an *Alford* plea was better than a trial, it had enough information to draw that conclusion, and so the *Alford* plea was valid.  (Resp. Exh. D. at 8).

The Court of Appeals properly identified and applied the test set forth in *Alford*.  The record establishes that Lynn, by his statements and answers at the plea hearing, entered the *Alford* plea knowingly voluntarily and intelligently.  Its decision was reasonable and entitled to deference under §2254(d).  Lynn has not shown that the determination of Missouri Court of Appeals was unreasonable and not entitled to deference, so this claim for habeas relief fails.  28 U.S.C. §2254(e)(1).

B. Lynn's ineffective assistance of counsel claim fails on the merits.

The rest of Lynn's claims are based on the effectiveness of plea counsel's assistance.  Lynn asserts plea counsel was ineffective for (1) advising Lynn to enter an open *Alford* plea because it provided no benefit over a trial; (2) failing to

read all the discovery the state provided; (3) failing to interview Scott Trower; (4) telling Lynn that he stood a "good chance" of receiving probation, and (5) failing to file and litigate a motion to suppress Lynn's statements to police. The Missouri Court of Appeals rejected all these claims on the merits. (Resp. Exh. D).

To prevail on a claim of ineffective assistance of trial counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To show deficiency, the petitioner must prove counsel's assistance fell below an "objective standard of reasonableness… under prevailing professional norms." *Id.* at 688. In considering whether this showing is met, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In the context of guilty pleas, to show prejudice, a petitioner must show that there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

(1) Advice about Open *Alford* Plea

Lynn contends that plea counsel was inefficient for advising him to enter an open *Alford* plea because the plea offered no benefit over a trial. Lynn asserts that

had he known that the state promised no benefit in exchange for the plea, he would not have entered it. The State responded that Lynn had received a benefit because the State did not charge him with second-degree felony murder.

The Court of Appeals determined "the record of the evidentiary hearing supports a finding that the State did promise a benefit." (Resp. Exh. D. at 11). The court found:

> The prosecutor testified, as he continued to find evidence in the case and as the other defendants began to enter guilty pleas, he determined that the State would be able to prove that Movant was guilty of felony murder as well as kidnapping. Movant's guilty plea was pursuant to a plea agreement in which the State would not charge Movant with felony murder if he pleaded guilty to kidnapping. Likewise, counsel testified that after he and prosecutor "went back and forth constantly" in discussions about the plea, the prosecutor ultimately decided to accept an *Alford* plea in exchange for the State not charging Movant with felony murder. Counsel stated he advised Movant that he believed entering an *Alford* plea was in Movant's best interest given the discovery in the case and the potential for a felony murder charge. Movant acknowledged that counsel told him the State would charge him with murder if he did not plead guilty to kidnapping. Thus, the record refutes Movant's assertion that the State promised no benefit in exchange for the plea.

(Resp. Exh. D. at 11-12).

Lynn further asserts that the State's threat of a felony murder charge was unreasonable. Lynn argues that the State lacked the ability to prove beyond a reasonable doubt that he was guilty of felony murder. To decide this contention, this Court would be required to resolve matters of state law. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law

questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, this Court will not address this argument and concurs with the determination of the Missouri Court of Appeals.

(2) Discovery

Lynn asserts that his plea counsel was ineffective because he failed to conduct an adequate pretrial investigation; specifically, Lynn alleges that plea counsel did not fully review the discovery. Lynn contends that had he known counsel failed to conduct adequate pretrial investigation, he would not have entered an *Alford* plea but would have insisted on going to trial. The Court of Appeals determined that this claim was not supported by the record. (Resp. Exh. D. at 15). The Court of Appeals reasoned:

> At the evidentiary hearing, counsel testified that he did not recall how many pages of discovery he reviewed but that he generally reviewed all of the discovery he received from the State and listened to recorded witness interviews. The prosecutor testified that Movant's counsel came to his office to view certain DVDs provided in discovery and discussed with him the contents of specific items of discovery, including witness statements. Thus, the motion court properly concluded that counsel reviewed the discovery provided by the States.

(Resp. Exh. D. at 15-16).

This decision that counsel was not ineffective was reasonable and entitled to deference under §2254(d). It is further supported by the prosecutor's testimony at the evidentiary hearing that plea counsel complained to him because he did not receive something referred to in the discovery responses, that plea counsel

privately viewed DVDs at the prosecutor's office, and that plea counsel spoke with him about the contents of specific items of discovery.  (Pet. Ex. 3 at 78).  Because this claim is refuted by the record, it is meritless.

### (3) Trower's Testimony

Lynn contends that his plea counsel was ineffective because he failed to conduct an adequate pretrial investigation, specifically, he did not interview and depose Scott Trower.  The Court of Appeals held this claim failed because Lynn did not prove that counsel failed to discover Trower's expected testimony.  (Resp. Exh. D. at 17).  The Court of Appeals found that, though counsel admitted he never spoke to Trower, the record showed that counsel was familiar with the statement Trower gave to the police about the incident and concluded that his testimony would not be helpful.  Trower admitted at the evidentiary hearing that he did not accompany Lynn, Moss, and Allen whey they removed Victim from the Harveys' house, nor was he present when the Harveys arrived and removed Victim from Lynn's house.  Trower would have been "unable to testify as to anything that occurred during those two crucial periods of time" and "unable to confirm or deny that Movant participated in placing duct tape on Victim's hands."  (Resp. Exh. D. at 17).

The decision of the Court of Appeals is reasonable and has support in the record.  Trower testified at the evidentiary hearing about how Victim was treated at

Lynn's home.  He stated Victim appeared "fine."  Victim was not bruised or

frightened, no one intimated him, and "everybody went out of their way to make

him feel at ease and make him feel at home."  (Suppl. to Pet. Doc. #3 at 93-94).

The motion court, however, found him "not credible."  (Pet. Exh. 1 at 51).

Meanwhile, Trower's testimony would not have been helpful to Lynn.

Trower was not present when the Harveys picked Victim up the next day.  (Suppl.

to Pet. Doc. #3 at 93-94).  Trower also testified that Victim had communicated fear

of what would happen to him if he was turned back over to the Harveys.  (Suppl. to

Pet. Doc. #3 at 99).

A federal habeas court owes deference to a state court's findings of facts,

including its credibility determinations.  *Smulls v. Roper*, 535 F.3d 853, 864 (8th

Cir. 2008) (en banc).  This presumption of correctness applies to the factual

determinations made by a state court at either the trial or appellate levels.  *Id.* at

864-65.  Lynn fails to meet his burden of demonstrating that the state court's

decision was contrary to, or was an unreasonable application of, clearly established

Federal law, or was based on an unreasonable determination of facts.

(4) Promises of Probation

Lynn alleges that his plea counsel was ineffective for representing to him

that he had a "good chance" of receiving probation, and had Lynn known he did

not stand a "good chance" of probation, he would not have entered his *Alford* plea

but insisted on going to trial. The Court of Appeals analyzed this claim and found it meritless. The Court of Appeals found the record of the evidentiary hearing demonstrated that counsel made no promise on Lynn's probation:

> Counsel stated that he advised Movant: "They may think you were a little more important… but at the same time I think you have a heck of a nice background." Counsel testified that he believed Movant's "good employment at the penitentiary" and his "pretty good background" might aid him in getting a lesser sentence but that he did not assure Movant that he would receive probation. Counsel stated: " I told him there's no promises here and I'm not assured of anything but I'm just telling you that you have a good opportunity." Counsel testified that he told Movant that with a blind plea the court could impose any sentence within the range of punishment. The motion court found counsel was a credible witness. Although Movant testified that counsel promised him that he would receive probation if he pleaded guilty, the motion court found that Movant's testimony in that regard was not credible. "We defer to the motion court's credibility determinations." *Waller v. State*, 403 S.W.3d 698, 709 (Mo. App. W.D. 2013) (quotation omitted).

(Resp. Exh. D. at 13-14).

The Court of Appeals decided that counsel's advice at most constituted "a mere prediction" of Lynn's sentence based on Lynn's employment history and lack of a serious criminal background. (Resp. Exh. D. at 14). The court further stated that, even if Lynn had established that "counsel made misleading statements that caused him to have a mistaken belief about his sentence, he would be entitled to relief only if his belief was reasonable." (Resp. Exh. D. at 14). The court decided Lynn's mistaken belief was unreasonable because during the plea hearing, Lynn answered affirmatively when the court asked him whether he understood that no

one could promise what his sentence would be, and the court could impose any sentence within the range of punishment permitted by law, and the range of punishment was a minimum of five up to a maximum of fifteen years in the penitentiary. (Resp. Exh. D. at 14).

The Court of Appeal's decision was reasonable and entitled to deference. This claim is also meritless and is refuted by the record.

At the plea hearing, Lynn told the trial court that he wished to enter an *Alford* plea and no threats or promises had been made to cause him to plead guilty and no promise had been made to him about what sentence he would receive. (Pet. Exh. 2 at 7). He stated that he understood that if the plea was accepted, a penitentiary sentence was the only possibility on his charge and the trial court could impose any sentence within the range of punishment from five to fifteen years. (Pet. Exh. 2 at 4, 7). At the evidentiary hearing, plea counsel testified that he told Lynn there was no promise of probation, but only that he had a good opportunity to receive probation based on his "favorable background." (Suppl. to Pet. Doc. #4 at 32). Even after sentencing, Lynn told the trial court that he had no complaints about his counsel's performance. (Pet. Exh. 2. at 27).

Lynn fails to show the incorrectness or unreasonableness of the Missouri Court of Appeals' determination that counsel was ineffective in telling him that he stood a good chance of probation. Where counsel informs a defendant of the range

of punishment, and defendant told the court he understood the range of punishment, the Eighth Circuit has held that defendant cannot establish either that counsel was ineffective or that he was prejudiced by the alleged error. *See Long v. Armontrout*, 938 F.2d 106, 107 (8th Cir. 1991). Under federal law, an attorney's prediction of a sentence does not necessarily render a guilty plea involuntary. Therefore, the state appellate court's decision is not contrary to Federal law or unreasonable determination of facts. Lynn's argument fails.

(5) Motion to Suppress

Lynn claims that plea counsel should have filed a motion to suppress Lynn's statements that he provided Harvey with duct tape and demonstrated how to bind Victim's hands. He asserts that he was intoxicated and sleep-deprived that he had no memory of that interrogation and that the statements were the only significant evidence against him. Lynn claims that had he known that plea counsel did not file a motion to suppress that statement, he would not have entered his *Alford* plea but would have insisted on going to trial.

The Court of Appeals pointed out that under Missouri law where a movant pleaded guilty voluntarily, the movant is not entitled to relief on a claim that counsel was ineffective for failing to file and pursue a motion to suppress evidence. (Resp. Exh. D. at 18). The court found Lynn entered the plea voluntarily and thereby waived this claim. (Resp. Exh. D. at 18).

This Court considers this argument on the merits and concludes Lynn fails to show that the evidence would have been suppressed. *See Freeman v. United States*, 611 Fed. Appx. 886, 886 (8th Cir. 2015) (where ineffective-assistance allegation is that counsel failed to file a motion to suppress before guilty plea, to demonstrate deficient performance by counsel and prejudice, a petitioner must show the evidence would have been suppressed).

At the evidentiary hearing, Officers Curtis Wirths testified about the interview with Lynn on December 23, 2009, at about three or four in the afternoon. Lynn drove to the Sheriff's office by himself because the Highway Patrol officers asked him to come as a witness of the death of Victim. (Suppl. to Pet. Doc. #3 at 123-24, 129). The interview was recorded and provided to the motion court as Exhibit F. (Suppl. to Pet. Doc. #3 at 124, 127). Initially, Lynn was not considered as a suspect, he had not been arrested or detained, and he was free to leave at any time. The conversation lasted about thirty to forty-five minutes. Lynn appeared to understand everything discussed. Lynn never asked to stop, to take a break, or to leave. Lynn seemed lucid and never indicated or appeared to be tired or intoxicated during the conversation. (Suppl. to Pet. Doc. #3 at 124-126, 131).

Officer Rice interviewed Lynn after Officer Wirth and read Lynn his *Miranda* rights. Lynn stated he understood and signed a document stating that he understood his *Miranda* rights. (Suppl. to Pet. Doc. #3 at 139-40). This interview

was recorded and provided to the motion court as Exhibit G. (Suppl. to Pet. Doc. #3 at 140-41). Lynn did not ask for any attorney, ask to stop the interview, or ask to leave. (Suppl. to Pet. Doc. #3 at 140). Office Rice testified that Lynn told him "he assisted [Harvey] by providing duct tape, explained how to wrap his hands and demonstrating how to wrap his hands so he'd be secure and go [sic] not get away." Lynn further advised that he told Victim to get off the couch, to get on the floor, and to put his hands behind his back. Lynn also admitted he witnessed the Harveys hitting Victim. (Suppl. to Pet. Doc. #3 at 141-42). During the interview, Lynn appeared lucid and understood the severity of the questions and the situation. He never suggested or seemed to be tired or intoxicated. He did not ask for a break. He left and returned home after the interview. (Suppl. to Pet. Doc. #3 at 143-44).

The motion court reviewed the taped interviews and found the records did not show any indication of intoxication or exhaustion precluding a voluntary confession. In addition, the motion court found there were no improper threats or promises made to Lynn during the interviews. It made clear to Lynn that he was free to end the interviews and leave at any time. Lynn never requested to leave, asked to stop, or requested counsel during the interviews. (Pet. Ex. 1 at 56). The motion court concluded even if plea counsel had filed a motion to suppress, there was no reasonable probability that such a motion would have succeeded. (Pet. Ex.

1 at 73).  These factual determinations are entitled to deference and Lynn presents

no clear and convincing evidence to overcome them.

As such, Lynn fails show that had the motion to suppress been filed, the

evidence would have been suppressed.  Lynn's claim that counsel was ineffective

for failing to file a motion to suppress will be denied.

### Certificate of Appealability

Under 28 U.S.C. § 2253, a petitioner may not appeal a lower court's

decision under 28 U.S.C. § 2254 to the appellate court unless granted a Certificate

of Appealability.  28 U.S.C. § 2253(c)(1)(A).  To grant such a certificate, a judge

must find a substantial showing of the denial of a federal constitutional right.  *Id.* at

§ 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A

substantial showing indicates that issues are debatable among reasonable jurists, a

court could resolve the issues differently or the issues deserve further proceedings.

*Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  I find that reasonable jurists

could not differ on any of Lynn's claims, so I will deny a Certificate of

Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Darril Lynn for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

A separate judgment in accordance with the memorandum and opinion is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 16th day of November, 2015.